[No. 13548.  Department One.  December 29, 1916.]

FRED HERREN *et al.*, *Respondents*, v. KANSAS CITY CASUALTY COMPANY, *Appellant.*[1]

MUNICIPAL CORPORATIONS—PUBLIC WORKS—CONTRACTOR'S BOND—NOTICE OF CLAIM—SUFFICIENCY. A notice of a labor claim against the contractor's bond for the improvement of the "Humptulips-Quinault County Road," sufficiently describes the work by referring to it as the "Quinault Road," where it was commonly known by that name.

SAME. Where a notice of a labor claim against the contractor's bond sufficiently identifies the improvement and work, neither the county nor the surety can object that the notice is insufficient in not stating exactly the full names of the contractor and surety, where the variance was slight and could not have misled any one.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered December 31, 1915, upon findings in favor of the plaintiffs, in an action on a contractor's bond, tried to the court. Affirmed.

*William E. Campbell*, for appellant.

*E. E. Boner*, for respondents.

PARKER, J.—The plaintiffs, as copartners, seek recovery from the Kansas City Casualty Company upon a bond executed by it in compliance with Rem. Code, § 1159, to secure subcontractors and others furnishing labor and material for the carrying on of certain public work. Trial before the superior court without a jury resulted in findings and judgment in favor of the plaintiffs, from which the defendant, casualty company, has appealed. The contractor, Spokane

[1]Reported in 162 Pac. 17.

Paving & Construction Company, which executed the bond as principal, while also named as a defendant in the complaint, was not served with summons, evidently because its officers and agents had abandoned the work and absented themselves so that none of them could be found.

In May, 1913, the Spokane Paving & Construction Company entered into a contract with Chehalis county, now Grays Harbor county, agreeing to construct a specified portion of the "Humptulips-Quinault County Road" which was commonly known and called "The Quinault Road." It was to be paid portions of the contract price monthly as the work progressed, in accordance with estimates to be made by the county engineer. Soon thereafter the Spokane Paving & Construction Company, as principal, and appellant, Kansas City Casualty Company, as surety, executed a bond in accordance with Rem. Code, § 1159, to secure subcontractors and others furnishing to the contractor material and labor for the carrying on of the work. Thereafter, while the work was in progress, respondents and the contractor, Spokane Paving & Construction Company, entered into the following subcontract:

"Sept. 10, 1913.

"This Agreement made and entered into by and between the Standard Transfer Company, and the Spokane Paving & Construction Company, whereby the Standard Transfer Company agreed to complete the grading of the hill in vicinity of station 65 on the Quinault Road; and the Spokane Paving & Construction Company agrees to pay the Standard Transfer Company 25-32 of the amount received from the county for such work, payment to be based on the engineer's estimate allowed the Spokane Paving & Construction Company as received by the Spokane Paving & Construction Company from the county.      (Signed) Spokane Paving & Construction "Standard Transfer Company            Company. "By F. Herren.            By Henry J. Lilienthal."

Respondents promptly proceeded with their work under this subcontract until they had earned, according to its terms, the sum of $639.05, at which time the Spokane Paving

& Construction Company had received payments from the county, which in turn entitled respondents to payments as specified in its subcontract, but which payments the Spokane Paving & Construction Company neglected to pay to respondents, though acknowledging that respondents were entitled thereto according to the subcontract. Thereupon respondents informed the Spokane Paving & Construction Company that they would not proceed further with the work until paid the amount then due them, and not being so paid, they did not proceed further with the work. The evidence warrants the conclusion that this not only constituted a breach of the subcontract on the part of the Spokane Paving & Construction Company, but also that that company then consented to respondents treating the subcontract and their obligations thereunder at an end. Thereafter, with a view of perfecting their claim against the Kansas City Casualty Company upon the bond, respondents filed with the board of county commissioners the following writing:

"To the Honorable Board of County Commissioners of Chehalis County:

"Notice is hereby given that the undersigned Fred Herren and Will Herren, doing business as Standard Transfer Company have a claim in the sum of $639.05 against the bond taken from *Spokane Paving Company as principal* and *Kansas City Surety Company as surety* for the work of grading, use of teams, grubbing and use of scrapers in connection with the contract let, and improvements being done on what is known as *the Quinault Road*."

"(Signed)   Standard Transfer Company
"By  Fred Herren."

The names we have italicized in this notice it will be seen are not exactly the same as the names appearing in the principal contract, subcontract, and bond. Thereafter this action was commenced, resulting in judgment against the surety for the amount claimed.

The principal contention made in appellant's behalf is that this notice of respondents' claim filed with the county com-

missioners is not such as is required by Rem. Code, § 1161, as a prerequisite to their right to sue the surety, in that the names of the principal contractor, surety, and work are not correctly stated in the notice and do not identify with sufficient certainty the bond upon which respondents seek recovery. We have seen that, while the correct name of the work or improvement was "Humptulips-Quinault County Road," it was also commonly known as "The Quinault Road." We think, therefore, that so naming it in the notice sufficiently informed both the county and the casualty company of the fact that respondents' claim was made with reference to the contract for the construction of that road. It seems equally plain to us that, since the notice sufficiently identified the work and improvement, neither the county nor appellant could fail to understand therefrom that it was the contract entered into by the Spokane Paving & Construction Company for the construction of that improvement that was meant by the notice, though the contractor was therein referred to as the "Spokane Paving Company." The reference to the work and the contractor being thus rendered sufficiently certain, leads us to the conclusion that neither the county nor appellant was misled by respondents' claim as stated in their notice "against the bond taken from the Spokane Paving Company as principal and Kansas City Surety Company as surety," though those are not exactly the names of the contractor and surety. It seems plain to us that neither the county nor appellant could fail to understand from the notice that it was a claim against the bond here sued upon. It manifestly was so considered by the county as evidenced by the indorsements on the back thereof made at the time of its filing, where the names of both the contractor and surety are correctly written as a portion of such indorsement of its filing.

In the early case of *Installment Building & Loan Co. v. Wentworth*, 1 Wash. 467, 25 Pac. 298, there was involved the sufficiency of a lien notice wherein the defendant and

owner was not correctly named, the notice in other respects being admittedly sufficient. Holding that the lien notice was sufficient, Judge Hoyt, speaking for the court, at page 469, said:

"In the notice of claim of lien the defendant corporation was described as 'Installment Building and Loan Association,' whereas, in fact, its true name was 'Installment Building and Loan Company.' The notice of claim of lien is attacked on the ground of its variance between it and the pleadings and proofs. We do not think that the variance was material. The corporation itself was making the improvement and could not have been misled by the slight error in stating its name. The case might be different if the property of the corporation was sought to be charged for an improvement for which it had not contracted."

It seems to us that the difference in the name used in the notice and the correct names in this case is no greater than the difference in that case. The express contractual obligation of appellant, casualty company, was to protect claims of the nature of respondents', so we think this case does not fall within the possible exception suggested by the closing sentence of the above quotation.

In *Strandell v. Moran,* 49 Wash. 533, 95 Pac. 1106, there was involved an alleged defective notice in that it was not signed by the claimant as provided by Rem. Code, § 1161, it being signed as follows: "Andrew Strandell by D. T. Winne, her attorney." It appeared that the claimant and plaintiff was Freda Strandell, who furnished the materials through her agent, Andrew Strandell, which apparently accounted for the signing of the notice in this peculiar manner. Holding that the notice was sufficient to entitle her to maintain the action, Judge Fullerton, speaking for the court, said:

"The notice was signed, it will be observed, by Andrew Strandell without the addition of the word 'Agent,' and this omission is thought to render the notice void, since, as it is claimed, such a signing is neither a signing by the real nor the trade name of the claimant. But the primary purpose of the

statute is notice.   It is intended to inform the city and the bondsmen of the contractor who, if any, of the laborers, mechanics, and materialmen have not been paid, and any form of notice that does this, and does not mislead either the city or the bondsmen to their injury, is sufficient to comply with the statute.   In the case before us there is no pretense that either the city or the bondsmen were misled, . . ."

In *Cascade Lumber Co. v. Aetna Indemnity Co.*, 56 Wash. 503, 106 Pac. 158, the notice involved was claimed to be insufficient because there was not stated therein any claim against the bond or the surety, but only that the claimant "has a bill against the high school building in the city of North Yakima, Yakima county, Washington, for materials" furnished, etc.   This notice of claim was not only filed with the proper public officials, but it was also served upon the surety company against which recovery was sought.   Holding that the notice was sufficient to entitle the claimant to sue the surety, Judge Mount, speaking for the court, at page 508, said:

"It is true that the notices filed and served upon the Aetna Indemnity Company November 21, 1907, do not say specifically that the materialmen have a claim against the *bond*. But they do say that the claimant has a bill against the high school building for materials furnished to the builders to be used in the building, and the amount thereof.   The notices were addressed to the surety company, and served upon it.   These notices were the *substance* of the notice provided for by the statute.   When it was addressed to and served upon the surety, that company must have known that the notice was given to them solely by reason of the bond, and that the claimants meant thereby to claim against the bond. The surety company could not have been misled thereby. These notices were therefore sufficient under the statute."

The reasoning of these decisions, we think, leads to the conclusion that the notice of claim in this case was such as to fully inform both the county and the casualty company that respondents' claim was made against the bond given by appellant, casualty company, with reference to the contract

executed by the Spokane Paving & Construction Company for the construction of the Humptulips-Quinault county road.

Our attention has been called to our decisions in *Robinson Mfg. Co. v. Bradley*, 71 Wash. 611, 129 Pac. 382; *Carstens Packing Co. v. Empire State Surety Co.*, 84 Wash. 545, 147 Pac. 36; and *Rodgers v. Fidelity & Deposit Co.*, 89 Wash. 316, 154 Pac. 444, in support of appellant's contention against the sufficiency of respondent's notice. We think none of these cases are controlling here. In the *Robinson Mfg. Co.* case, the claimed notice consisted only of correspondence by the claimant addressed to the treasurer of the library board, which amounted to nothing more than a demand or request for the payment of the amounts claimed to be due the claimant, with nothing in any of the letters which could be construed as asserting a claim against the surety upon the bond. In the *Carstens Packing Co.* case, there was involved a notice of claim which purported to assert a claim against three separate bonds given with reference to three separate improvements without segregation as to the amount claimed against each. This was held by the court to be an invalid claim, adopting by analogy the rule that lien claims attempted to be so asserted are held invalid, as in *Sarginson v. Turner Investment Co.*, 69 Wash. 234, 124 Pac. 379. In the *Rodgers* case, the notice consisted of a letter with an inclosed bill and a request for information as to what bonding company became surety for the contractor. No claim was therein asserted as against the bond. The letter could be construed as nothing more than an assertion of a claim against the contractor and possibly as against an unpaid balance due the contractor from the state. It was held that, because of this want of claim against the bond, the claimant had not acquired the right to sue the surety.

Other contentions made in appellant's behalf we think have been sufficiently answered by what we have already said. The judgment is affirmed.

MORRIS, C. J., MAIN, ELLIS, and CHADWICK, JJ., concur.