[No. 23233. Department One. January 7, 1932.]

STANDARD ACCIDENT INSURANCE COMPANY, *Respondent,*
v. INTERLOCKING TILE CORPORATION, *Appellant.*[1]

*Bausman, Oldham & Walkinshaw,* for appellant.

*Battle, Hulbert & Helsell* and *Joseph E. Gandy,* for respondent.

MITCHELL, J.—H. Gulbrandson & Son entered into a contract with the county of Snohomish, by and through its board of county commissioners, for the construction of the Snohomish county detention home. The Standard Accident Insurance Company became surety for the contractors, giving the usual statutory bond, under the provisions of Rem. Comp. Stat., §§ 1159 to 1161. The Interlocking Tile Corporation entered into and performed a subcontract with Gulbrandson & Son for the furnishing and installation of the tile roof on the building, in the sum of $860.

The building was completed and formally accepted

[1]Reported in 6 P. (2d) 383.

by the county, at which time the county retained, pursuant to its rights under the provisions of the contract, $7,231 of the amount due the contractors. The contractors failed to pay costs of constructing the building in an amount altogether largely in excess of the remainder due the contractors.

The surety company then brought this action against the county and its commissioners, the general contractors, and all persons who, within the information of plaintiff, had or claimed to have any lien or right of action, to ascertain and preserve the amount of money owing and retained by the county, and to have it paid out as ordered by the court. The county paid into court the amount retained by it in connection with the contract.

A large number of claimants appeared in the action by cross-complaints, each seeking judgment for the amount of his claim against the plaintiff as surety on the contractor's bond. On the trial, findings and judgment were entered in favor of several claimants against the plaintiff, on its bond, in amounts in excess of the fund paid into court as the balance due on the contract.

The Interlocking Tile Corporation filed a cross-complaint in the action in the sum of $831.52, as the balance claimed to be due upon the performance of its subcontract. The trial court found, however, that the Interlocking Tile Corporation

" . . . failed to file a good and sufficient notice of claim as against the reserve fund and the Standard Accident Insurance Company, surety and plaintiff herein,"

and entered conclusions of law and judgment to the same effect.

The Interlocking Tile Corporation has appealed, and

assigns as errors the finding and conclusion against the sufficiency of its notice of claim, and the refusal of the trial court to sign a requested finding of fact in its favor.

As applied to this case, Rem. Comp. Stat., § 1161, provides that a subcontractor shall not have a right of action on such bond, unless within thirty days (no question here about the time) after the completion of the contract, with an acceptance of the work by an affirmative action of the board, he present to such board a notice in writing in substance as follows:

"To (here insert the name of the state, county or municipality or other public body, city, town or district):

"Notice is hereby given that the undersigned (here insert the name of the laborer, mechanic or subcontractor, or materialman, or person claiming to have furnished labor, materials or provisions for or upon such contract or work) has a claim in the sum of.............................. dollars (here insert the amount) against the bond taken from.................................................(here insert the name of the principal and surety or sureties upon such bond) for the work of.................................................(here insert a brief mention or description of the work concerning which said bond was taken).

"(Here to be signed)................................................."

Two written instruments are relied on by the appellant as constituting notice. They are as follows:

"May 17, 1930.

"County Commissioners, Everett, Wash.

"Gentlemen:

"On May 14 we started work as sub-contractors under general contractor H. Gulbrandson, to instal the clay tile roof on the Detention Home at Everett, and if for any reason our account is not paid, we will hold Mr. H. Gulbrandson and his bond for payment of the same.          "Yours very truly,

"Interlocking Tile Corp.,
"By Albert Armstrong."

"July 10, 1930.
"County Commissioners, Everett, Wash.
"Gentlemen:

"We enclose herewith statement of our account against H. Gulbrandson for labor and material furnished in connection with the roof on the Detention Home at Everett, as per plans by C. Ferris White.

"We understand that Mr. Gulbrandson's work in this building is covered by bond, and will take this means of informing you that this account is past due.

"Yours very truly,
"Interlocking Tile Corp.,
"By Albert Armstrong."

The statute, it has been noticed, says that the claimant shall *file* a notice in writing. As a matter of fact, neither of the instruments in this case was *filed,* but, being treated as ordinary correspondence by the county auditor, they became lost or destroyed, and could not be produced at the trial; so that secondary evidence of the sending and contents of the letters was resorted to. Of course, the claimant in a way was not blameable for the loss of the letters by the county auditor, but from the standpoint of the claimant with reference to the requirement of notice, the claimant neither suggested nor requested in the letters, or otherwise, that they be filed or preserved.

The notice the statute requires to be given is intended in part for the benefit of the surety on the contractor's bond. The statute speaks of notice of a claim against the "bond taken from........................................(here insert the name of the principal and surety or sureties upon such bond)," etc. In the letters to the county commissioners in this case, there was a very poor effort at naming the contractor, as H. Gulbrandson instead of H. Gulbrandson & Son, and no attempt whatever to name the surety.

Appellant attempts to justify its conduct in that respect as sufficient by reason of statements in certain

of our cases to the effect that it is not necessary that the statute be strictly complied with. Three of those cases are *Strandell v. Moran,* 49 Wash. 533, 95 Pac. 1106; *Cascade Lumber Co. v. Aetna Indemnity Co.,* 56 Wash. 503, 106 Pac. 158, and *Robinson Mfg. Co. v. Bradley,* 71 Wash. 611, 129 Pac. 382.

In the last case it was held that letters from a materialman to a library board, informing it of the balance due for materials furnished a contractor and requesting prompt payment, without referring to the contractor's bond, did not constitute notice to the city under Rem. Comp. Stat., § 1161. It was also said:

"We therefore hold that actual notice cannot take the place of this written statutory notice, and that no liability can be enforced against sureties under a bond of this character, without some form of written notice which shall substantially conform to the requirement of the statute."

Still further, in the course of the opinion, upon referring to language used in the two former cases upon which the claim of less than strict compliance with the statute was held sufficient to make the notice good, the court said:

"This language, before it is accepted as authoritative, must be read in connection with the facts to which it was applied. In doing so, it will be seen that, in the *Strandell* case, notice was actually filed with the municipality that a claim was made against the bond and the sureties therein named; the only objection being that Freda Strandell, the claimant, was doing business as 'A. Strandell, agent,' and the notice was signed 'Andrew Strandell,' without adding the word 'agent.' This signature, under the facts, was held sufficient. In the *Cascade Lumber Co.* case, notice was also given to both the municipality and the surety. The notice failed to state that a claim was made against the bond. In discussing this point, it was said:

"'But they [notices] do say that the claimant has a bill against the high school building for materials

furnished to the builders to be used in the building, and the amount thereof. The notices were addressed to the surety company, and served upon it. These notices were the *substance* of the notice provided for by the statute. When it was addressed to and served upon the surety, that company must have known that the notice was given to them solely by reason of the bond, and that the claimants meant thereby to claim against the bond.' ''

The next case, *Rodgers v. Fidelity & Deposit Co.,* 89 Wash. 316, 154 Pac. 444, was one in which the notice given by a materialman was found to be insufficient to hold the surety. The opinion states that, from the language of the statute, the claimant must, before suing the surety,

'' . . . state in his notice, at least in substance, that he 'has a claim . . . against the bond,' designating it by naming the principal and sureties; and that it is not sufficient that he make a statement in his notice of claim that amounts to nothing more than a statement of his claim against the contractor, his original debtor. *The sureties upon such bonds have a right to know what claims are being made against them,* by timely filing of the required notice.''

In *Herren v. Kansas City Casualty Co.,* 94 Wash. 77, 162 Pac. 17, the claimant actually filed with the proper board a notice of claim, of which the court said that neither the county nor the surety could reasonably object that the notice was not sufficient, because it did not state precisely the full names of the contractor and the surety, where the variance was slight and not misleading. Manifestly, in that case there was a bona fide attempt to comply with the requirements and purposes of the statute.

In *Van Doren Roofing & Cornice Co. v. Guardian Casualty & Guaranty Co.,* 99 Wash. 68, 168 Pac. 1124, the facts were such that the case cannot be claimed as authority for the appellant in this case. The notice

was defective, although actually filed with the proper officer, but the contractor and surety were at once notified of the filing of the claim, and in their answer to the complaint of the claimant asserting his claim the contractor and surety

" . . . affirmatively averred that the contractor nor its bondsman 'has never disputed the claim of said cross-complainant and has never refused to pay the same,' and set up, as an excuse for the failure to pay this claim, the fact that other claimants had filed fraudulent claims, because of which the Port of Seattle was withholding money due on the contract. These answers close as follows:

" 'A tender is hereby made by this defendant to this cross-complainant out of said money in the registry of the court of the amount of its claim.' "

Lastly, appellant relies on the case of *Title Guaranty & Surety Co. v. Coffman, Dobson & Co.,* 97 Wash. 211, 166 Pac. 620. Counsel have taken occasion, in elucidation of that opinion, to set out in their brief a copy of the notice given by the claimant in that case, from which it appears that the surety's name was not specifically mentioned. But that notice was about as formal as it could well be. It stated upon its face that "notice is hereby given" by the claimant that he has a claim, in a stated amount, against the bond furnished by the contractors, naming them and giving their post office address, for material furnished, fully describing it, that was used in the building of a bridge, naming it, which notice was correctly signed by the claimant. In that case, the claimant's notice was actually filed, the opinion so states; the instrument was in form a notice, it covered material already furnished, and, as the opinion substantially says, stated that the effect of the notice was that the claimant intended to hold the bondsmen and surety liable.

But to hold the doctrine in that case as authority

here, would not be justified. Here, the instruments were not notices in form, were never filed, nor was there anything in them to show that they were intended to be filed as notice to the contractors or their surety; there was no declaration of intention to claim a right at present against the bond or the surety, but only a letter to the county commissioners that, if the county didn't pay, then claim would be made against the bond, presumably, of course, by filing a notice within the time, at the place and in the form required by the statute, which is plain in its terms.

The common indulgence of less than strict compliance with the statute, applicable in cases of this kind, must not by the process of extension be carried too far, lest destruction of the statutory rule itself be effectually accomplished. We are not disposed to so extend it in this case.

The finding complained of is supported, in our opinion, by a preponderance of the evidence.

Judgment affirmed.

TOLMAN, C. J., HERMAN, BEELER, and PARKER, JJ., concur.